IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHEENA PHINISEE, individually and on behalf of A.P., a minor, as her parent and natural guardian,** | : : : | **CIVIL ACTION** |
| Plaintiffs, | : : | |
| v. | : : | |
| **DEREK LAYSER, ESQ., et al.,** | : | **No. 14-3896** |
| Defendants. | : | |

## MEMORANDUM

Schiller, J.                                                                                                   November 5, 2014

On September 22, 2014, the Court issued a Memorandum and Order dismissing for failure to state a claim Plaintiffs' claims for negligence, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, and breach of contract. Presently before the Court is Plaintiffs' Motion to Amend Findings of Fact and Judgment or, in the Alternative, Motion for Reconsideration [Pls.' Mot.]. Plaintiffs argue that this Court made three clear errors of law in the September 22 Memorandum: (1) misapplying *Muhammad v. Strassburger, McKenna, Messer, Shilobod, & Gutnick*, 587 A.2d 1346 (Pa. 1991); (2) erroneously holding that Plaintiffs' fraud claim was barred by collateral estoppel; and (3) unfairly foreclosing Plaintiffs from amending the Complaint. For the following reasons, Plaintiffs' motion is denied.

## I.    STANDARD OF REVIEW

The purpose of a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Out of consideration for finality and judicial economy, motions under Rule 59(e) should be granted sparingly. *Ruscavage*

*v. Zuratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993). A motion to alter or amend a judgment may be granted only for one of the following reasons: (1) an intervening change in controlling law; (2) the discovery of new evidence not available previously; or (3) the need to correct a clear error of law or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A party may not use a Rule 59(e) motion to relitigate old matters or to present evidence that could have been offered earlier. *Palladino v. Governor of Pa.*, App. A. No. 14-2766, 2014 WL 5137653, at *2 (3d Cir. Oct. 14, 2014).

## II.   DISCUSSION

### A.   The Court Properly Relied on *Muhammad*.

Plaintiffs assert that this Court interpreted *Muhammad* too broadly and held that a plaintiff may never sue her attorney for causes of action arising from a settlement agreement. This is incorrect. The Court concluded that *Muhammad* applied to the non-fraud claims because Plaintiffs' malpractice suit essentially expressed dissatisfaction with the ultimate amount of money received in the settlement. *Phinisee v. Layser*, Civ. A. No. 14-3896, 2014 WL 4682077, at *3 (E.D. Pa. Sept. 22, 2014). In interpreting *Muhammad*, Pennsylvania courts have distinguished between lawsuits alleging a failure to inform a client of the legal ramifications of a settlement agreement and lawsuits second-guessing an attorney's professional judgment in evaluating the value of a claim. *See McMahon v. Shea*, 688 A.2d 1179, 1183 (Pa. 1997) (Cappy, J., concurring). This case falls within the latter category. Here, the Medicaid lien on Phinisee's recovery would have remained in effect whether Phinisee had agreed to the settlement at the conference or won a judgment at trial. While Plaintiffs suggest that *McMahon* should control, that case is easily distinguishable. In *McMahon*, the plaintiff's attorney failed to advise him of the consequences of not merging a prior alimony agreement into his final divorce decree. *Id.* at

2

1180. The Pennsylvania Supreme Court ruled that the plaintiff could maintain a malpractice suit against his attorney to recover damages incurred from his obligation to pay alimony to his remarried wife. *Id.* at 1182. In this case, however, Phinisee did not suffer new damages or incur new obligations as a result of signing the settlement agreement. The Medicaid lien would have remained on Phinisee's recovery, regardless of how such recovery came about.

Furthermore, *Muhammad* is applicable to this case because of the nature of the damages suffered and the remedies sought by Plaintiffs. As this Court noted in its September 22 Memorandum, the Amended Complaint states twice that Plaintiffs suffered damages because "Phinisee settled the lawsuit for value significantly less that [*sic*] the value of the case." (Pls.' Am. Compl. ¶¶ 61, 71.) Essentially, Plaintiffs seek to recover the difference between a hypothetically larger settlement or jury award and the $1.2 million settlement to which Phinisee agreed. This is exactly the type of damages claim prohibited by *Muhammad*. *See also Moon v. Ignelzi*, No. 260 WDA 2008, 2009 Pa. Super. LEXIS 7016, at *20 n.8 (Pa. Super. Ct. Dec. 11, 2009) (concluding that *Muhammad* precluded a legal malpractice action arising from attorneys' alleged failure to inform the plaintiffs of the consequences of a subrogation lien, as the plaintiffs' recovery would require an assumption of a jury award larger than the settlement). Accordingly, this Court will not reconsider its dismissal of Plaintiffs' non-fraud claims.

### B. Plaintiffs Are Estopped From Relitigating Factual and Legal Issues Which Were Decided in the Previous Proceeding.

Collateral estoppel, or issue preclusion, prohibits relitigation of issues of evidentiary facts, ultimate facts, or law, which were actually litigated and necessary to the original judgment. *Witkowski v. Welch*, 173 F.3d 192, 198-99 (3d Cir. 1999). Plaintiffs characterize the prior proceedings before Magistrate Judge Jacob Hart as limited to the "extremely narrow" issue of whether Phinisee had been informed of the Medicaid lien by Defendants. (Pls.' Mot. at 6.)

3

However, a review of the record demonstrates that the issues of fact giving rise to Plaintiffs' causes of action were already litigated and decided by Magistrate Judge Hart.

### 1. *Defendants informed Phinisee of the Medicaid lien.*

In determining whether the settlement between Phinisee and the United States was enforceable, Magistrate Judge Hart specifically determined that Phinisee was adequately informed of the nature and consequences of the Medicaid lien by Defendants. (Defs.' Mot. to Dismiss Ex. A [Order and Op. Granting Gov't's Mot. to Enforce Settlement] at 8.) This issue of fact is clearly precluded by collateral estoppel.

### 2. *Defendants' alleged misrepresentation that Phinisee did not have a claim for damages in her own name had no impact on the outcome.*

Magistrate Judge Hart determined that "the advantage Ms. Phinisee seems to think she would have obtained by bringing a claim in her own name to recover for medical expenses is illusory," as the Government "would not have given some extra amount." (*Id.* at 12). This Court will not allow further litigation as to whether Defendants properly advised Phinisee to drop her own claim, or whether Phinisee suffered damages as a result.

### 3. *Defendants did not file motions against Plaintiffs' best interests.*

Magistrate Judge Hart observed that it was unusual for Defendants to no longer represent Phinisee at the time they filed the Minor's Compromise Petition. (Defs.' Mot. to Dismiss Ex. C [Op. Denying Mot. for Reconsideration] at 5.) Nevertheless, because Defendants had negotiated the original settlement, the court found Defendants' actions to be entirely appropriate and in the best interests of the minor, A.P., and granted the Petition. (*Id.*) Plaintiffs are now precluded from relitigating this same issue—whether the steps taken by Defendants to enforce a valid settlement were proper—under different legal theories.

    *4.  Defendants did not fraudulently conceal Dr. Van Thiel's expert report or falsely convince Phinisee that liability was tenuous.*

  Plaintiffs argue that Defendants suddenly changed their tune at the settlement conference and convinced Phinisee that liability was tenuous, when all their previous statements and filings had indicated that the evidence of liability was overwhelming. (Pls.' Mot. at 6.) This is inaccurate. In granting the Minor's Compromise Petition, Magistrate Judge Hart determined that the settlement "represented a fair evaluation of the lawsuit, given the state of the scientific evidence." (Op. Denying Mot. for Reconsideration at 5.) Magistrate Judge Hart noted that the Government's summary judgment motion presented a serious challenge to liability, and that Phinisee had been properly informed of her risk of obtaining nothing at trial. (*Id.*) Plaintiffs may not relitigate whether the settlement was objectively fair, or whether Defendants properly advised Phinisee of the possible outcomes, under the guise of a legal malpractice lawsuit.

  In addition, Plaintiffs allege that Defendants withheld Dr. Van Thiel's expert report. However, Plaintiffs' counsel previously submitted this report as an exhibit to Plaintiffs' September 19, 2012 motion asking Magistrate Judge Hart to reconsider his approval of the Minor's Compromise Petition. (Pls.' Mot. Ex. B at 1.) Consequently, this Court concludes that Magistrate Judge Hart would have considered Dr. Van Thiel's report in reaching his conclusion that the settlement represented an accurate evaluation of the evidence.

  **C. Leave to Amend**

  For the foregoing reasons and the reasons this Court previously articulated, the Court denies leave to amend on the grounds of futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997).

## III. CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion to Alter or Amend the Judgment. An Order consistent with this Memorandum will be docketed separately.